WICKER, J.,
dissenting with reasons.
hi respectfully dissent, believing that the majority is incorrect in two respects.
First, I cannot subscribe to the theory that Ms. Cornman’s excluded statements would not change the outcome.
In my view, the statements were significant because they were probative of a central issue in the case — whether the Hospital had notice of the alleged dangerous condition. At this point in the proceedings, the excluded testimony was not cumulative evidence. Furthermore, the statements were not hearsay under La. C.E. art. 801(D)(3)(a), and the trial judge abused her discretion in refusing to allow the testimony.
Second, in my opinion, the majority discounts Ms. Emily’s deposition testimony that was introduced into evidence.
In this connection a portion of Ms. Em-bley’s testimony recounting the history of pre-accident “near misses” is impressive. She was aware that their population consisted of “some people that were slower” or people who “would just stop walking.” She testified that as a result, “we had concerns about the doors about the time.” She stated: “[t]he door would start to close and it would worry us.” Although Ms. Embley “saw that as a problem,” she minimized its importance by stating: “[b]ut as far as people saying, you know, the doors attacked me or something went crazy with the doors, not |2really, not besides not opening when you pushed the button.” Ms. Embley’s testimony indicates that unless the door was broken or there was an accident resulting in injury, the door was considered safe.
*692 Thus, the testimony — read in its entirety — establishes that after the accident the potential danger described above was no longer minimized.
The testimony also establishes that Ms. Embley was aware that some patients might need assistance to move safely out of the doors. And, according to Mr. Bor-gardt, if the door closed after the predetermined time delay, a person assisting someone holding a walker would be unable to make the door reopen automatically. According to Ms. Embley, it was unlikely that someone could manually open both doors. She explained that a person’s arms could not be extended to the degree necessary to open the doors.
Consequently, the Hospital had pre-acci-dent notice that the premature closing could result in a malfunctioning door that would potentially cause an accident such as the present one. Although there had been substantial use of the door without any prior accident — and there had been no change from its condition from the rehabilitation unit’s move to the date of the accident — the premature closing of the door in this case was not an unexpected event. Hence, the Hospital was required to anticipate or guard against the hazard.
For the above reasons, I would reverse the judgment of the trial court dismissing the plaintiffs’ suit; overrule the granting of the motion for involuntary dismissal; reverse the trial judge’s ruling sustaining the hearsay objection and render judgment overruling the hearsay objection; and, remand the case to the trial court for a completion of a trial on the merits. On remand, the Hospital would have the opportunity to present countervailing evidence at a full trial of this matter.